**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Theodore B. Schenke,           ) | |
|              Plaintiff,           ) | No. 06-CV-27 TUC JMR |
| vs.                                           ) | **ORDER** |
| JoAnne B. Barnhart,           ) | |
|              Defendant.           ) | |

Pending before this Court are the parties' cross-motions for summary judgment. On October 16, 2006, Magistrate Judge Glenda E. Edmonds issued a Report and Recommendation (R&R) to the Court (Doc. No. 20), recommending that the Court deny Plaintiff's Motion for Summary Judgment (Doc. No. 12) and grant Defendant's Cross-Motion for Summary Judgment (Doc. No. 14). Plaintiff has filed Objections to the R&R (Doc. No. 23). Defendant has not filed any Objections. For the reasons stated below, the Court adopts the Magistrate Judge's Report and Recommendation in its entirety.

I.    BACKGROUND

    A.    Procedural Background

Plaintiff applied for childhood disability benefits in 2002, claiming he was disabled from birth due to blindness in his right eye. The Social Security Administration denied Plaintiff's application initially and again upon reconsideration. Plaintiff requested review by an Administrative Law Judge (ALJ). At the March 21, 2005 hearing, the ALJ found that

Plaintiff was not disabled. Plaintiff appealed, but the Appeals Council denied review, making the decision of the ALJ the final decision of the Commissioner. Plaintiff then filed this action.

    B.    <u>Factual Background</u>

The underlying facts are set forth in greater detail in the R&R (at 2-5). In addition to blindness in his right eye, Plaintiff suffers from neck pain, migraine headaches, dysthymia, and generalized anxiety disorder. Plaintiff graduated from high school, completing his final semester of high school through home study, due to his anxiety. Plaintiff likewise dropped out of college after one semester because of his anxiety. He worked briefly for his girlfriend's family business, but otherwise has no employment history.

    C.    <u>ALJ's Findings</u>

The ALJ conducted the required five-step process for evaluating claims for disability benefits. 20 C.F.R. § 404.1520; *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991). First, the ALJ found that Plaintiff was not engaged in substantial gainful activity. Second, the ALJ found that Plaintiff had "severe" impairments. Third, the ALJ found that Plaintiff's impairments do not meet the criteria for any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. Fourth, the ALJ found that Plaintiff had no past relevant work, and that his limitations were not exertional in nature. Fifth, the ALJ found, based on the testimony of a vocational expert, that Plaintiff could perform other substantial gainful work as a data entry worker, file clerk, night security guard, and night office or commercial janitor/cleaner.

    D.    <u>The Report & Recommendation</u>

A District Court will set aside a decision to deny benefits "only if it is not supported

by substantial evidence or it is based on legal error." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Magistrate Judge Edmonds concluded that the ALJ's decision is supported by substantial evidence. For the reasons stated below, the Court agrees.

II.     LEGAL ANALYSIS

    A.     Standard of Review

Plaintiff repeats the same objections to the Magistrate Judge's R&R that he initially made to the ALJ's ruling. Nonetheless, the District Court conducts a de novo review of those parts of an R&R to which objections are filed. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). The District Court may either accept, reject, or amend all or any portion of the R&R. *Id.* If the parties do not object to the R&R or portions thereof, the Court will not modify or set aside those portions unless they are clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

    B.     Discussion

Plaintiff objects to the ALJ's treatment of the vocational expert on two grounds: (1) the hypotheticals posed to the vocational expert; and (2) the vocational expert's comment that Plaintiff is "unemployable." Plaintiff also objects to the ALJ's rejection of Dr. Levy's opinion. These objections are without merit.

        1.     The Hypothetical Presented to the Vocational Expert

Plaintiff argues that the ALJ's hypothetical failed to account for the limitations imposed by his neck pain and his headaches and trouble focusing. To be valid, the ALJ's hypothetical must set out all the limitations and restrictions of the claimant. *Magallanes v.*

*Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).  The ALJ, however, need not include all of the claimant's *alleged* limitations; she need only include those restrictions that are supported by substantial evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

As the Magistrate Judge noted in the R&R, the ALJ recognized Plaintiff's neck pain, but concluded this pain was not severe enough to limit his ability to work.  (A.R. 28-29).  This conclusion is supported by the fact that Plaintiff's neck pain has not prevented him from playing racquetball and performing household chores–including lifting heavy bags of garbage.  (A.R. 245-48).  Plaintiff treats his neck pain with over-the-counter analgesics, not prescription medication.  (A.R. 244-45).  Plaintiff has not sought treatment for his neck pain since the Spring of 2000.  (A.R. 165, 167-68).  The Magistrate Judge correctly found that substantial evidence supports the ALJ's conclusion that Schenke's neck pain does not limit his ability to work.  *See, e.g.*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (claimant's allegation of disabling pain rejected in part because he was not taking strong prescription analgesics); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ entitled to draw inference from general lack of medical care for back problems during intervening years).

The other limitations alleged by claimant relate directly to the blindness in his right eye: trouble focusing, headaches caused by eye strain, and "deterioration of the left eye."  Plaintiff objects to the ALJ's failure to mention these limitations specifically in the hypothetical presented to the vocational expert.  There is substantial evidence to support the ALJ's conclusion that these alleged limitations do not limit Plaintiff's ability to work over and above the limitation imposed by his right-eye blindness.  (A.R. 28-30).  Plaintiff testified that

he can drive, read, and use the computer. (A.R. 230, 233, 237-39). He further testified that he spends six or seven hours each day on the computer. (A.R. 251). This evidence supports the ALJ's conclusion that Plaintiff's trouble focusing and headaches from eye strain do not limit his ability to work. Plaintiff also refers to deterioration of the left eye. While the record does indicate "decreased vision on the left", there is no evidence that his vision on the left has deteriorated to such a degree that it limits his ability to work. (A.R. 157, 164). His vision in his left eye, according to his 1999 eye exam, is 20/20-. (A.R. 164). Plaintiff's prescription for "glasses to be utilized for schoolwork and while driving at night" is not consistent with severe deterioration in his left eye. (A.R. 164). The ALJ properly included in her hypothetical those limitations that were supported by substantial evidence. Plaintiff's objection is overruled.

        2.        The Vocational Expert's comment regarding Plaintiff's "employability"

Plaintiff objects to the "dismissal" of the vocational expert's opinion that Plaintiff is unemployable. The vocational expert stated that Plaintiff's demeanor–his lack of eye contact, flat affect, and poor speech patterns–would not be "terribly attractive" to employers. As the Magistrate Judge noted, disability turns only on the ability of a person to do work, not on the ability of the person to be hired. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986). Plaintiff's demeanor, as noted by the vocational expert, does not affect his ability to do actual work; it affects his attractiveness to employers.[1] The ALJ did not err by failing to consider

---

[1] Plaintiff attempts to distinguish this case from *Martinez*, claiming that, in *Martinez*, the "hiring practices" of potential employers were the reason for the decision not to hire, while in this case, Plaintiff's own impairment is the cause. Both cases, however, involve the reluctance of potential employers to hire–or continue to employ–an individual simply because of a disability or

the vocational expert's statement that Plaintiff was "unemployable." Plaintiff's objection is overruled.

### 3. The ALJ's Rejection of Dr. Levy's Opinion

Plaintiff also objects to the ALJ's rejection of Dr. Levy's opinion. Plaintiff characterizes Dr. Levy as a treating physician, not merely an examining physician. The Magistrate Judge assumed, without deciding, that Dr. Levy was a treating physician. This Court will do the same.

In evaluating evidence to determine whether a claimant is disabled, the opinion of an treating physician is entitled to great weight. *Ramirez v. Shalala*, 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may only reject a treating physician's uncontradicted opinion if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter*, 923 F.2d at 1396); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If another physician contradicts the opinion of the treating physician, the Commissioner may only reject that opinion by providing "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 762 n.7 (9th Cir. 1989).

Dr. Levy concluded that Plaintiff's mental impairments rendered him disabled, although he might be able to tolerate a workplace where he would have significantly limited contact with other people. These conclusions are contradicted by the opinions of the non-

---

impairment, whether it be a physical disability or flat affect and a lack of eye contact, that does not affect the individual's ability to do the job.

examining disability determination physicians Nathan and Tangeman. The ALJ, therefore, could reject Dr. Levy's opinion if she provided "specific and legitimate reasons supported by substantial evidence on the record." *Lester*, 81 F.3d at 830-31.

The ALJ lists several specific and legitimate reasons for her rejection of Dr. Levy's opinion. First, Dr. Reed and Dr. Schaper–both treating physicians–documented stabilization or improvement in Plaintiff's condition with treatment. (A.R. 147-50, 177). Second, Plaintiff received no psychological treatment from November 2002 until he saw Dr. Levy in April 2003.[2] Third, Dr. Levy's evaluation fails to account for Plaintiff's ability to work part-time and travel by air to Michigan.[3] Plaintiff objects to only two of these reasons–the improvement noted by Dr. Reed and Dr. Schaper, and Dr. Levy's failure to account for Plaintiff's part-time work and trip to Michigan.

Plaintiff was evaluated by Dr. Reed in December 2001, shortly after being hospitalized for a panic attack. (A.R. 151). According to Dr. Reed's treatment notes, Plaintiff reported continued mental problems with anxiety while his medication was being adjusted. (A.R. 147-150). By June 2002, Plaintiff reported less anxiety and no panic attacks. (A.R. 147-150). When Plaintiff started treatment with Dr. Schaper in May 2002, she rated his Global Assessment of Functioning (GAF) at 50, indicating "serious symptoms or any

---

[2] Plaintiff does not mention this reason in his objection, so it is not discussed here. However, an unexplained gap in treatment may be interpreted as evidence that the claimant's condition is less serious that he alleges. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Plaintiff's gap in treatment from November 2002 to April 2003 constitutes a specific and legitimate reason for rejecting Dr. Levy's opinion.

[3] The ALJ also notes the internal inconsistencies of Dr. Levy's evaluation, but the Court does not consider that rational here.

serious impairment in social, occupational, or school functioning. (A.R. 185; DSM-IV, pp. 30-32). At the end of his treatment in October 2002, Plaintiff reported that he was attending classes, that he felt his depression and anxiety were under control, and that his phobias, while persisting, were not bothering him. (A.R. 177). Dr. Schaper rated Plaintiff's GAF at 70, reflecting "some mild of some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." (A.R. 177; DSM-IV, pp. 30-32). While he was undergoing treatment in the summer of 2002, Plaintiff was able to work part-time, and by the end of his treatment, he was able to travel by air to Michigan. These evaluations appear to be in conflict with Dr. Levy's opinion of Plaintiff's disability.

In his objection, Plaintiff points to evidence in the record–specifically in the records of Drs. Reed and Schaper–that he alleges supports Dr. Levy's opinion. The issue, however, is not whether there is evidence that might support Dr. Levy's opinion; there may well be.[4] The issue is whether there is substantial evidence supporting the ALJ's reason for rejecting that opinion.

The ALJ also noted that Dr. Levy failed to discuss Plaintiff's ability to work part-time and travel by air to Michigan. Plaintiff's part-time work is some evidence that he can work with others, follow directions, and perform work-related tasks. This is inconsistent with Dr. Levy's conclusions regarding Plaintiff's ability to "work in coordination or proximity wiht

---

[4]Plaintiff also seems to allege that his condition could not have improved or stabilized as he was still suffering from symptoms while undergoing treatment. The ALJ did not reject Dr. Levy's opinion because treatment had completely cured Plaintiff, but because with treatment his condition had improved and stabilized.

other without being distracted by them," to "accept instructions and respond appropriately to criticism from superiors," and to "ask simple questions or request assistance." (A.R. 201-02). Likewise, Plaintiff's travel by air is inconsistent with Dr. Levy's opinion regarding Plaintiff's "ability to travel in unfamiliar places or use public transportation." (A.R. 201-02). Rather than explaining his conclusions in light of these apparent inconsistencies, Dr. Levy does not mention them at all. The Magistrate Judge properly concluded that the ALJ provided specific and legitimate reasons for her rejection of Dr. Levy's opinion, and that those reasons were supported by substantial evidence in the record. Plaintiff's objection is overruled.

The Court concludes that the portions of the Magistrate Judge's Report and Recommendation to which the parties did not object are not clearly erroneous or contrary to law. Having reviewed de novo Plaintiff's objections and for the reasons stated above, the Court adopts the Report and Recommendation of the Magistrate Judge in its entirety.

Accordingly,

**IT IS ORDERED** that the **REPORT AND RECOMMENDATION** of the Magistrate Judge, filed October 16, 2006, (Doc. No. 20) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment (Doc. No. 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that this cases is **DISMISSED**.

DATED this 13th day of March, 2007.

_____
John M. Roll
Chief United States District Judge